UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

JOYCE PETERS,

                Plaintiff,                        **MEMORANDUM & ORDER**

     -v.-                                 07-CV-2553 (DRH)(ETB)

MOLLOY COLLEGE OF ROCKVILLE CENTRE,
SUSAN VITALE (in her official and individual
capacities), DOLORES PARRY (in her official and
individual capacities), JEANNINE MULDOON
(in her official and individual capacities), and
RICHARD SCHURE (in his official and individual
capacities),[1]

                Defendants.
_____

**Appearances:**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
50 Clinton Street, Suite 501
Hempstead, New York 11550
By:  Frederick K. Brewington, Esq.

**For the Defendants:**
**HARRINGTON, OCKO & MONK, LLP**
81 Main Street, Suite 215
White Plains, New York 10601
By:  Kevin J. Harrington, Esq.
     John T.A. Rosenthal, Esq.

**HURLEY, Senior District Judge**:

        Plaintiff Joyce Peters ("Plaintiff") filed the present action against defendants

Molloy College of Rockville Centre ("Molloy College"), Susan Vitale ("Vitale"), Dolores Parry

("Parry"), and Jeannine Muldoon ("Muldoon") (collectively, "Defendants") claiming that she

was discriminated against based on her race and in retaliation for her complaints of race

_____

     [1] Plaintiff withdrew her claims against defendant Richard Schure on April 16, 2008.

discrimination.  Defendants have moved to dismiss the Complaint pursuant to Federal Rule of

Civil Procedure ("Rule") 12(b)(6).  For the reasons stated below, the motion is granted in part

and denied in part.

## BACKGROUND

The following facts are taken from the Complaint and are presumed true for

purposes of this motion.

Plaintiff is an African-American female who was a candidate for a Master's

Degree in nursing at Molloy College.  Vitale is a professor at Molloy, Parry is the Associate

Dean for Academic Support Services, and Muldoon is the Associate Dean of the Graduate

Nursing Program.  All three defendants are Caucasian women.

### I.    *Plaintiff's Failure to Graduate*

During the Fall of 2006, Plaintiff enrolled in a nursing course taught by Vitale

entitled Research Methods and Designs.  That class, which carried the designation of Nursing

555, was the final course requirement for Plaintiff to obtain her Masters Degree.  In December

2006, Plaintiff submitted her final project for the course.  Vitale gave Plaintiff a failing grade on

this project and, as a result, Plaintiff was denied a Master's Degree.

According to the Complaint, the final project was a research proposal that was to

count as 40% of the total grade in the course.  After Plaintiff submitted her research proposal,

Vitale "sent out an email falsely accusing Plaintiff of 'copying a completed study with data,

results, analysis all completed by someone else.'"  (Compl. ¶ 26.)  The email was "published to

at least Defendant Muldoon by email."  (*Id.*)

Thereafter, Plaintiff met with Vitale, who accused Plaintiff of plagiarism and

directed Plaintiff to resubmit her proposal via e-mail on or before December 15, 2006. Although

Plaintiff objected to Vitale's accusations, she rewrote her proposal and e-mailed it to Vitale. On

December 15, 2006, Vitale e-mailed Plaintiff "that Plaintiff's assignment did 'not meet passing

requirements for the course.'" (*Id.* ¶ 30.) Plaintiff then asked for the requirements and requested

that Vitale return her proposal and review it with her; Plaintiff's request was denied.

Plaintiff and Vitale arranged a meeting to discuss Plaintiff's failing grade. When

Plaintiff arrived, she was surprised that Muldoon was also in attendance. Vitale and Muldoon

interrogated Plaintiff about her proposal and accused her of plagiarism, asserting that Plaintiff's

proposal mimicked a similar study being conducted by Muldoon's friend. When Plaintiff asked

to see the study, Muldoon and Vitale refused to provide it. Plaintiff informed them that she felt

their behavior was "abusive," that "she was the subject of discrimination," and that she was

filing a grade appeal. (*Id.* ¶ 38.)

Thereafter, on December 19, 2006, Plaintiff filed a grade appeal with Parry.

(Parry Aff., dated Nov. 7, 2007, Ex. D.)[2] Plaintiff's grade appeal details the submission of her

research project and what happened with Muldoon and Vitale thereafter. (*Id.*) In her appeal,

Plaintiff complains generally of "unjust and unfair treatment" and makes no reference to racism.

(*Id.*)

On December 27, 2006, Plaintiff received a letter from Parry advising Plaintiff

that "Vitale informed Parry of a 'possible' academic infraction [by Plaintiff] subject to

---

[2] Plaintiff's grade appeal, which Defendants submitted as part of their motion papers, is properly before the Court on this Rule 12(b)(6) motion as it is incorporated by reference in the Complaint. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

disciplinary action." (Compl. ¶ 40.) On January 8, 2007, Plaintiff received a notice that her graduation had been denied because she was missing the requirement of Nursing 555 for which she had been graded an "F."

In response to her request for an appeal of her grade, Plaintiff was informed that she could meet with Parry on January 11, 2007. Plaintiff appeared at the meeting with her attorney. Parry refused to meet with Plaintiff so long as her attorney was present. Plaintiff was then told that no meeting would be allowed and that she should have her attorney contact Molloy's counsel. Plaintiff was given a letter signed by Parry stating as follows: "As discussed today, there are procedures available on campus for addressing Academic Infractions which Ms. Peters has not yet completed. You may contact our Attorney." (*Id.* ¶ 43.) The name and address of Molloy's counsel was provided.[3]

On January 30, 2007, Molloy's counsel faxed a letter to Plaintiff's counsel stating: "The enclosed memorandum from the Associate Dean for Academic Services at Molloy College sets forth the procedures available to your client to resolve this matter." (*Id.* ¶ 47.) Attached to the fax was a two-page letter written by Parry, outlining several options Plaintiff had so that she could graduate. These options included continuing with the grade appeal process and/or attending a Nursing 555 course in the Spring 2007 session with another professor and resubmitting a new research proposal to Vitale. (Parry Aff., dated Nov. 7, 2007, Ex. G.) Plaintiff would also have to complete all sections of the "Big MITT Program." (*Id.*) Plaintiff was advised to meet with Parry to discuss these options.

_____

[3] Molloy's counsel was listed as Richard Schure, who as noted above, was a defendant to this action until Plaintiff agreed to voluntarily withdraw all claims against him.

-4-

On February 1, 2007, Plaintiff received a notice from the Molloy Registrar that she had not met the requirement for Nursing 555. The next day, counsel for Molloy sent Plaintiff's counsel a memorandum suggesting that Plaintiff meet with Parry "'in order that she may complete the process prior to the end of the present semester.'" (Compl. ¶ 49.) Plaintiff's counsel responded that Plaintiff was indeed interested in going forward with the "process" and advised that Plaintiff felt that she was the "'subject of discriminatory, defamatory and retaliatory treatment . . . [.]'" (*Id.* ¶ 50.)

More correspondence ensued between counsel. On February 21, 2007, counsel for Molloy indicated that Plaintiff "had no 'legal remedies', and that [Plaintiff] had not commenced 'the process.'" (*Id/* ¶ 52.) Plaintiff's counsel responded by "once again" offering to have Plaintiff meet with Parry with each party having a witness present. (*Id.* ¶ 53.) No response was received.

## II.     *Pattern of Discrimination/Dr. Frieda Pemberton*

The Complaint asserts that Defendants engaged in a pattern of racial discrimination directed at African-Americans. For example, Plaintiff alleges that she "learned from her fellow students that Caucasian students and others were and are judged and graded on a different basis th[a]n [P]laintiff." (*Id.* ¶ 20.) Plaintiff further alleges that "over the past two years African-American graduate nursing students have lodged complaints that their papers have been graded and evaluated more harshly than that of white students. Upon information and belief these complaints were not taken seriously." (*Id.* ¶ 63.)

The only remaining allegations pertaining to alleged discrimination involve an African-American professor at Molloy, Dr. Frieda Pemberton. In the Spring of 2006, Plaintiff,

along with other African-American students, became aware of attempts by Dr. Teresa Aprigliano to undermine and question the competency of Dr. Pemberton by, for example, encouraging students to complain about her. On April 26, 2006, Plaintiff wrote a letter to the President of Molloy and expressed her concern over Dr. Aprigliano's actions. No written response was ever received by Plaintiff to this letter; however, Plaintiff alleges that "upon information and belief Defendants Vitale, Muldoon and Parry were all aware and/or became aware of Dr. Aprigliano's actions and the opposition voiced by Plaintiff." (*Id.* ¶ 62.)

The Complaint also alleges that in 2005 and 2006, Plaintiff voiced her concern over allegedly false accusations and complaints lodged against Dr. Pemberton by Caucasian students. Specifically, Plaintiff alleges that Dr. Pemberton had a skirmish with a Caucasian student, who failed to obtain a mandated signed contract to establish her clinical practice requirement. After the student complained, she was removed from Dr. Pemberton's class and placed in a class by herself with Muldoon, who accepted her unsigned contract.

Plaintiff further alleges that the administration at Molloy College supported false accusations made against Dr. Pemberton by four Caucasian students who accused Dr. Pemberton of being racist. Plaintiff alleges that after she complained "about the improper treatment of Dr. Pemberton by Molloy and its administration" (*id.* ¶ 74), Dr. Pemberton was removed from teaching graduate level nursing courses and reassigned to teach at the undergraduate level. Plaintiff alleges that "[t]his differential treatment and willingness to ignore rules and accommodate a white student by Molloy and Defendant Muldoon, in disregard for the position taken by an African-American professor [are] part of an ongoing pattern of preferential treatment given to white students and abusive actions taken against African-Americans generally." (*Id.* ¶

73.)

**III.    *The Complaint***

The Complaint asserts six causes of action: (1) violations of 42 U.S.C. § 2000d,

Title VI of the Civil Rights Act of 1964 ("Title VI"); (2) violations of 42 U.S.C. § 1981

("Section 1981"); (3) breach of contract; (4) defamation; (5) violations of the New York

Executive Law; and (6) violations of 42 U.S.C. §§ 1985 and 1986 ("Sections 1985 and 1986").

In addition, the Complaint generally alleges a claim of retaliation.  Defendants move to dismiss

the Complaint in its entirety.  For the reasons indicated below, Defendants' motion is granted in

part and denied in part.

## *DISCUSSION*

**I.    *Motion to Dismiss: Legal Standards***

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule

12(b)(6).  In *Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955 (2007), the Court disavowed

the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not

be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 45-46.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do. Factual allegations must be
enough to raise a right to relief above the speculative level, on the
assumption that all the allegations in the complaint are true (even
if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally

heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts where

such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-

58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, – F.3d –,

No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007) (quoting *Twombly*, 127 S. Ct.

at 1974).[4] As always, the Court must "accept[] all factual allegations in the complaint and

draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## II.   *Defendants' Motion to Dismiss Plaintiff's*
   *Title VI and Section 1981 Claims is Granted in Part*

Defendants advance several arguments as to why Plaintiff's Title VI and Section

1981 claims should be dismissed. The Court will address Defendants' arguments in turn.

---

[4] Although *Twombly* did not make clear whether the plausibility standard applies beyond
the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility
standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d
87, 98 n.2 (2d Cir. 2007).

-8-

**A.**   ***Plaintiff's Title VI and Section 1981 Claims
Adequately Allege Discriminatory Intent***

Plaintiff's first cause of action asserts that Defendants discriminated against her in

violation of Title VI, which provides as follows:

> No person in the United States shall, on the ground of race, color,
> or national origin, be excluded from participation in, be denied the
> benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance.

42 U.S.C. § 2000d.   Plaintiff's second cause of action alleges that Defendants' actions violated

Section 1981, which provides in pertinent part:

> All persons within the jurisdiction of the United States shall have
> the same right . . . to make and enforce contracts, to sue, be parties,
> give evidence, and to the full and equal benefit of all laws and
> proceedings, for the security of persons and property.

42 U.S.C. § 1981.  In order to establish a claim under either statute, a plaintiff must show, inter

alia:  (1) that the defendant discriminated against her on the basis of race; (2) that the

discrimination was intentional; and (3) that the discrimination was a "substantial" or "motivating

factor" for the defendant's actions.  *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).

Defendants argue that Plaintiff fails to state a claim of intentional race

discrimination under both Section 1981 and Title VI because she fails to support her allegations

of discrimination with any specific facts.  For example, Defendants contend that Plaintiff fails to

allege that Defendants' informal investigation of the plagiarism charge against her differed in

any way from investigations against non-minority students.  Defendants also point out that

Plaintiff's own grade appeal does not assert a single accusation of racism.

Although the Complaint is not a model of clarity, read liberally, it is sufficient to

give Defendants fair notice of Plaintiff's claims and the grounds upon which they rest.  Plaintiff

alleges that as part of Defendants' pattern and practice of discrimination, and in retaliation for

Plaintiff's inquiries and complaints to Molloy about discriminatory behavior exhibited towards

an African-American professor, she was given a failing grade and denied the right to graduate

based upon her race. In support of this claim, she alleges that Caucasian students were afforded

preferential treatment and that complaints by African-American students were ignored. In

particular, she alleges that Muldoon "broke the rules" by accepting a Caucasian student's service

hours even though the student had failed to obtain a signed contract and then pulled this student

from Pemberton's class; however, Plaintiff was unfairly and harshly penalized based upon false

accusations of plagiarism. In short, Plaintiff identified the specific events giving rise to her

claim and alleged that she was treated less favorably than other students because of her race.

Plaintiff's "allegations, taken as true, indicate the possibility of discrimination and thus present a

plausible claim . . . ." *See Boykin v. Keycorp.*, 521 F.3d 202, 216 (2d Cir. 2008). "The merits of

a claim like [Plaintiff's], which on its face presents a plausible allegation of [discrimination],

should be tested on summary judgment." *Id.*

        Finally, Defendants argue that Plaintiff's Title VI claims against Molloy College

should be dismissed because liability under Title VI cannot be imputed to a university due to

alleged discriminatory conduct by that university's employees. *See Goonewardena v. N.Y.*, 475

F. Supp. 2d 310, 328 (S.D.N.Y. 2007). Rather, "an educational institution may be liable under

Title VI if it is 'deliberately indifferent' to racial harassment to such an extent that the

indifference can be seen as racially motivated." *Rodriguez v. N.Y.U.*, No. 05 Civ. 7374, 2007

WL 117775, at *6 (S.D.N.Y. Jan. 16, 2007).

        Here, contrary to Defendants' contentions, the Complaint does allege that Molloy

had knowledge of Plaintiff's allegations of racism. The Complaint alleges that Plaintiff told

Muldoon and Vitale that she felt "she was the subject of discrimination" (Compl. ¶ 38), and that

Plaintiff's counsel advised Molloy's counsel via letter that Plaintiff felt that she was the

"'subject of discriminatory, defamatory and retaliatory treatment . . . [.]'" (*Id.* ¶ 50.)

Accordingly, Defendants' motion to dismiss Plaintiff's Title VI claim against Molloy College on

the basis that "Plaintiff [n]ever brought to the attention of anyone at Molloy any allegations of

racial discrimination against her" (Defs.' Mem. at 5) is denied.

**B.** **Plaintiff's Section 1981 Claims are Dismissed Against**
**the Individual Defendants in Their Individual Capacities**

In order to state a claim under Section 1981, a plaintiff must allege, inter alia,

discrimination in connection with one or more of the activities enumerated in the statute. The

protected rights enumerated in Section 1981 include the rights "to make an enforce contracts, to

sue, be parties, [and] give evidence." 42 U.S.C. § 1981. Therefore, Plaintiff may state a Section

1981 claim by alleging that Defendants breached a contract with her and the breach was

motivated by racial prejudice. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)

("Any claim brought under § 1981 . . . must initially identify an impaired 'contractual

relationship' under which the plaintiff has rights.") (quoting 42 U.S.C. § 1981(b)).

Defendants move to dismiss Plaintiff's Section 1981 claims on the ground that

Plaintiff has failed to allege the existence of any contractual relationship between her and

Defendants. New York courts have held that an implied contract arises when a student enrolls at

a university. *Tripp v. Long Island Univ.*, 48 F. Supp. 2d 220, 224 (E.D.N.Y. 1999), *aff'd*, 201

F.3d 432 (2d Cir. 1999). "The implicit terms of such a contract are that the university will act in

good faith toward the student and the student will fulfill the university's academic requirements

and comply with its ethical, procedural, and other standards."  *Id.*; *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998).

However, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim," and thus, derivatively, a Section 1982 claim.  *Gally*, 22 F. Supp. 2d at 206.  Courts will not involve themselves in claims sounding in tort, and which require the Court to second guess the professional judgment of educators.  *Id.* at 207.  "Indeed, the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."  *Id.*   "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student."  *Id.*

Defendants argue that Plaintiff's claim amounts to no more than her dissatisfaction with the professional judgment of Defendants regarding her failing grade and, therefore, cannot state a claim under Section 1981.  The Court disagrees.

The Complaint alleges that Defendants breached two distinct contractual provisions.  First, the Complaint alleges that Molloy College's handbook provides that "[s]tudent, instructor, administrator, or other persons concerned should first make every effort to resolve [a student complaint] through informal consultation with the Associate Dean for Academic Support Services to reach an acceptable solution short of formal procedure."  (Compl. ¶ 54.)  Defendants argue that they complied with this provision and that it was Plaintiff who "stonewalled the informal process by insisting on the presence and participation of her lawyer, and has refused to allow that process to come to completion."  (Defs.' Mem. at 10.)  Clearly, these are issues of fact that are not properly decided on a Rule 12(b)(6) motion.

Next, the Complaint alleges that "Molloy represented to plaintiff based on its own written college policies, publicized through the college catalog, student conduct manual and other means, that plaintiff would not be treated in a discriminatory fashion on account of [her] race or ethnic background." (Compl. ¶ 86.) These allegations satisfy the contractual requirement of a Section 1981 claim. *See Tripp*, 48 F. Supp. 2d at 224 ("A term of [an] implied contract between [a] University and [a] plaintiff [is] presumably the right to complete [a] degree without being subjected to discriminatory conduct.").

Finally, to the extent Defendants move to dismiss Plaintiff's Section 1981 claims against the individual defendants on the ground that Plaintiff does not allege that she had a contractual relationship with the individual defendants, the Court grants this motion to the extent the individual defendants are being sued in their individual capacities. Should Defendants wish to furnish the Court with authority that these claims should be dismissed against the individual defendants in their official capacities as well, the Court will entertain such an application.

C.   ***Plaintiff's Title VI Claims are Dismissed Against the Individual Defendants in Their Individual Capacities***

Title VI prohibits discrimination based on "race, color, or national origin," in connection with "any program or activity receiving Federal financial assistance." *Tolbert*, 242 F.3d at 69. Thus, Title VI conditions an offer of federal funding on a promise by the recipient "not to discriminate, in what amounts essentially to a contract between the Government and the recipient of [federal] funds." *Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289 (1998). Here, the Complaint alleges that "Molloy receives federal financial assistance in the form of student loans and grants." (Compl. ¶ 76.)

In their moving papers, Defendants argue that Title VI claims may not be brought

against individual defendants. In response, Plaintiff asserts that she is only suing the individual defendants in their official capacities. Thus, to the extent the Complaint can be read to assert Title VI claims against the individual defendants in their individual capacities, they are dismissed.

Defendants, however, argue that the Title VI claims against the individual defendants must be dismissed in toto because the individual defendants are not the recipients of federal funds. Although it is well-established that individuals are not subject to liability under Title VI in their individual capacities, it is not so clear whether individuals may be subject to liability under Title VI in their official capacities. *Compare Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002) ("Title VI claims cannot be asserted against an individual defendant [because] the individual is not a recipient of federal funding.") *and Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding.") *with Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) (dismissing claim "insofar as it alleges a Title VI violation by Officer Rice in his individual capacity" only) *and Bayon v. State Univ. at N.Y.*, No. 98-CV-0578E, 2001 WL 135817, at *2 (W.D.N.Y. Feb. 15, 2001) ("[P]laintiff's Title VI claims against the individual defendants in their individual capacities fail because this act does not provide for individual liability."). Accordingly, based on the papers submitted, the Court declines to dismiss Plaintiff's Title VI claims against the individual defendants in their official capacities. However, Defendants' motion in this regard is denied without prejudice to renew upon the submission of further authority.

**D.    *Summary of Plaintiff's Title VI and Section 1981 Claims***

In sum, Defendants' motion to dismiss Plaintiff's Title VI and Section 1981 claims is granted only with respect to Plaintiff's claims against the individual defendants in their individual capacities. In every other regard, it is denied.

**III.** ***Defendants' Motion to Dismiss Plaintiff's Breach of Contract Claim is Granted Only With Regard to Plaintiff's Claims Against the Individual Defendants in Their Individual Capacities***

Plaintiff's third cause of action asserts a breach of contract claim. For the same reason discussed *supra* with regard to Plaintiff's Section 1981 claims, Defendants' motion to dismiss this claim is granted with respect to the individual defendants in their individual capacities only; otherwise, Defendants' motion is denied.

**IV.** ***Defendants' Motion to Dismiss Plaintiff's Defamation Claim is Denied***

Plaintiff's fourth cause of action asserts a claim for defamation based upon Defendants' alleged "false and malicious accusations" that Plaintiff plagiarized her work which were publicized in the "Molloy community." (Compl. ¶ 97.) Defendants contend that their statements cannot be the basis of a defamation claim because they are protected by a qualified privilege. Plaintiff does not address this specific issue in her brief.

New York recognizes a qualified "common interest privilege" to help facilitate the flow of information between parties regarding subjects in which they share a common interest. *See Liberman v. Gelstein*, 80 N.Y.2d. 429, 437 (1992); *see also Demas v. Levitsky*, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) ("[A] qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest.") (citation and internal quotation marks omitted). Defendants argue that

-15-

"[p]rofessors and administrators at a university have a common interest in preserving the academic reputation and integrity of the faculty and students, and [therefore] have a qualified privilege to report matters to university authorities." (Defs.' Mem. at 17.)

A plaintiff may defeat a claim of qualified privilege by demonstrating that a defendant spoke with malice, either of the common law or the constitutional variety. *See Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000). Common law malice means spite or ill will; constitutional malice means that the statement was made with a high degree of awareness of probable falsity. *Konikoff*, 234 F.3d at 99 (citing, inter alia, *Liberman*, 80 N.Y.2d at 438-39).

Here, the Complaint alleges that Defendants made their statements maliciously "without ever presenting a shred of evidence to support these claims." (Compl. ¶ 97.) The nature and extent of Defendants' mens rea is a question of fact not appropriate for disposition under Rule 12(b)(6). *See Penn Group, LLC v. Slater*, No. 07 Civ. 729, 2007 WL 2020099, at *6 (S.D.N.Y. June 13, 2007) ("Whether [a common interest] privilege would apply here depends on who the recipients were, whether those recipients actually shared a common interest with [defendant] and with each other, whether [defendant] acted with malice, and whether [defendant] made any statements she knew or should have known were false. All of these factual questions depend upon the assessment of an evidentiary record, which is not available on a Rule 12(b)(6) motion.") (internal citation omitted); *Demas*, 738 N.Y.S.2d at 410 ("Because the 'common interest' privilege constitutes an affirmative defense [], it does not lend itself to a preanswer motion to dismiss . . . .") (internal citations omitted). Accordingly, the Court declines to find that Defendants are protected by a qualified privilege at this juncture. Their motion to dismiss

the defamation claim is therefore denied.

**V.  *Defendants' Motion to Dismiss Plaintiff's New York Executive Law Claim is Denied***

Plaintiff's fifth cause of action asserts a claim of selective enforcement pursuant to section 296 of the New York Executive Law ("Section 296").  Plaintiff alleges that non-African-American students who were found to have plagiarized were subjected to "significantly less punishments and less harsh treatment and penalties than Plaintiff."  (Compl. ¶ 105.) Defendants assert that this claim should be dismissed because:  (1) the Court should decline to exercise supplemental jurisdiction over this claim because the courts are split as to whether individuals are personally liable under this statute; and (2) Plaintiff's allegations are too conclusory and fail to allege that Defendants actually participated in the alleged discriminatory conduct.  Neither of Defendants' arguments has merit.

Section 296(6) states that it is an unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."  N.Y. Exec. Law § 296(6).  The Second Circuit has held that this language imposes individual liability on a defendant who actually participates in the conduct giving rise to a discrimination claim.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  Although many New York state courts have disagreed with the analysis of the *Tomka* decision, it remains binding on this Court.  Given the clear holding of *Tomka* and that the facts underlying Plaintiff's federal and state discrimination claims substantially overlap, the Court will exercise supplemental jurisdiction over Plaintiff's Section 296 claim.

With regard to Defendants' next argument, the Court finds that although not

replete with specifics, Plaintiff's Complaint adequately alleges that each defendant participated in the conduct giving rise to her discrimination claim. It alleges that Vitale, Plaintiff's professor, and Muldoon, an Associate Dean, falsely accused Plaintiff of plagiarism, treated Plaintiff with "contempt" and "belittled" her (Compl. ¶ 35), and refused to identify the study Plaintiff allegedly copied. It further alleges that Plaintiff informed them that their conduct was abusive and discriminatory (*id.* ¶ 38), and that Muldoon gave a Caucasian student preferential treatment (*id.* ¶¶ 72-73), thereby implying that their conduct was based on Plaintiff's race. The Complaint also alleges that Parry, an Associate Dean, hindered Plaintiff's efforts to resolve the matter via informal methods and implies that the basis for Parry's actions were race-motivated. These allegations are sufficient to withstand Defendants' motion. Accordingly, Defendants' motion to dismiss Plaintiff's claim of selective enforcement is denied.

**VI.** ***Defendants' Motion to Dismiss Plaintiff's Section 1985 and 1986 Claims is Granted***

Plaintiff's sixth cause of action asserts violations of Sections 1985 and 1986. The Court will address each claim separately below.

**A.** ***Plaintiff's Section 1985 Claim is Dismissed***

Defendants argue that Plaintiff's Section 1985 claim should be dismissed, inter alia, on the basis of the intracorporate conspiracy doctrine. For the reasons that follow, the Court agrees.

To state a cause of action under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance

of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988). "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas*, 165 F.3d at 146 (citations and internal quotation marks omitted).

Generally, the intracorporate conspiracy doctrine bars liability when the alleged conspirators work for the same organization. *Jeter v. N.Y.C. Dep't of Educ.*, – F. Supp. 2d –, No. CV-0603687, 2008 WL 623135, at *4 (E.D.N.Y. Mar. 4, 2008); *see also Hoffman v. Nassau County Police Dep't*, No. 06-CV-1947, 2008 WL 1926773, at *5 (E.D.N.Y. Apr. 20, 2008) ("[I]t is well settled that there can be no actionable conspiracy under the civil laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment.") (citations and internal quotation marks omitted). There is an exception, however, that permits a Section 1985 claim to proceed against members of the same organization if the conspirators were "acting in their personal interests, wholly and separately from the corporation[.]" *Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007); *see also Jeter*, 2008 WL 623135, at *4 (noting exception applies where conspirators "motivated by an independent personal stake in achieving the corporation's objective") (citation and internal quotation marks omitted). The personal stake must be "separate and apart from the bias itself, or else the exception would swallow the rule." *Jeter*, 2008 WL 623135, at *4 (citation and internal quotation marks omitted).

Plaintiff argues that the intracorporate conspiracy doctrine does not apply because

she has alleged that Defendants acted outside the scope of their employment. (*See* Pl.'s Mem. in Opp'n at 12 ("Clearly, the acts of retaliation, conspiracy and discrimination, as alleged in paragraph 2 of the Complaint, are not within the scope of job duties at Molloy College.").) However, contrary to Plaintiff's contention, the Complaint merely alleges that Defendants intentionally conspired to discriminate against Plaintiff and does not allege any additional motivation unrelated to her general allegations of conspiracy based on race. Thus, because each defendant alleged to have violated Plaintiff's civil rights is employed by Molloy College, and because Plaintiff has failed to allege that Defendants were acting in their personal interests, Plaintiff's Section 1985 claim is dismissed.[5]

### B.   *Plaintiff's Section 1986 Claim is Dismissed*

"Section 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas*, 165 F.3d at 147. Thus, Section 1985 liability is a necessary predicate to a Section 1986 claim. *Id.* Here, having failed to state a claim under Section 1985, Plaintiff also fails to state a Section 1986 claim. Accordingly, Plaintiff's Section 1986 claim is dismissed.

## VII.   *Defendants' Motion to Dismiss Plaintiff's Retaliation Claims is Denied*

---

[5] At the end of her brief, Plaintiff conclusorily states that "in the event that any one or more of the Plaintiff's claims are deemed to require additionally pleaded allegations, pursuant to . . . Rule 15, Plaintiff respectfully request the right to amend her pleadings, as Plaintiff has shown good faith in her pleadings and can support any allegations to sustain Plaintiff's claims." (Pl.'s Mem. at 20.)  Nowhere in Plaintiff's memorandum does she articulate specific factual allegations to support such an amendment. Accordingly, Plaintiff's request is denied without prejudice to renew upon the filing of a properly briefed motion pursuant to this Court's Individual Practice Rules.

Although not specifically denominated as a separate cause of action, the Complaint alleges that Defendants unlawfully retaliated against Plaintiff. "To state a *prima facie* case of retaliation, [a] plaintiff must show: (1) that she engaged in a protected activity; (2) that defendant was aware of that activity; (3) that she suffered an adverse decision in the pursuit of her education; and (4) that there was a causal connection between the protected activity and the adverse decision." *Koumantaros v. City Univ. of N.Y.*, No. 03 Civ. 10170, 2007 WL 840115, at *10 (S.D.N.Y. Mar. 19, 2007). Defendants contend that Plaintiff has failed to plead facts sufficient to satisfy any of the elements of a retaliation claim. The Court disagrees.

Read liberally, the Complaint alleges that: (1) in April 2006, Plaintiff sent a letter to the President of Molloy College voicing her concerns over the mistreatment of Dr. Pemberton, an African-American professor; (2) in 2005 and 2006, Plaintiff and other students "raised issue" about allegedly false accusations levied against this professor, including a claim that the professor took racist actions against four Caucasian students (Compl. ¶ 64); (3) in November 2006, Plaintiff voiced her open support for this professor in response to a Caucasian student's complaints; (4) Vitale, Muldoon, and Parry were all aware of the opposition voiced by Plaintiff; (5) as a result of her vocal opposition, Plaintiff was falsely charged with plagiarism and ultimately denied timely graduation and (6) there was a close temporal nexus between Plaintiff's last complaints (November 2006) and the allegedly false charges of plagiarism (December 2006). These allegations are sufficient to state a retaliation claim.

Although Defendants make much of Plaintiff's failure to expressly allege that her complaints concerning Dr. Pemberton were premised upon alleged *racial* discrimination by Defendants, the Complaint does allege facts which suggest this to be the case. For example,

Plaintiff alleges that non African-American faculty were afforded preferential treatment over Dr. Pemberton. She also alleges that four Caucasian students made false accusations that Dr. Pemberton was a racist and that the Molloy College administration supported these false accusations as part of an "ongoing pattern of preferential treatment given to white students and abusive actions taken against African-Americans generally." (Compl. ¶ 73.) Finally, she alleges that she "raised issues about the improper treatment of Dr. Pemberton" (*id.* ¶ 74) and that she "voiced her open support for Dr. Pemberton." (*Id.* ¶69.) A reasonable inference may be drawn from these allegations that Plaintiff was complaining that Defendants were discriminating against Dr. Pemberton due to her race. Although Defendants may prove otherwise via summary judgment, at this stage in the litigation, Plaintiff's allegations are sufficient to survive dismissal under Rule 12(b)(6).

Defendants also argue that Plaintiff fails to tie her allegations regarding Dr. Pemberton to Defendants' conduct as to Plaintiff. Defendants are mistaken. The Complaint alleges that upon information and belief, all Defendants were aware of Plaintiff's vocal opposition to the adverse treatment afforded Dr. Pemberton. (*Id.* ¶ 62.) These allegations are sufficient to satisfy the awareness element of a retaliation claim. *See Boykin*, 521 F.3d at 215 ("'Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff . . . .'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed. 2004)).

Finally, the Court rejects Defendants' contention that Plaintiff has failed to allege a causal connection between the protected activity and the alleged retaliatory conduct. In the

Second Circuit, a plaintiff can indirectly establish a causal connection to support a retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted). Here, the Complaint alleges that Plaintiff's last complaints were in "2006" (Compl. ¶ 64) and "November 2006." (*Id.* ¶ 69.) Given that Defendants accused Plaintiff of plagiarism in December 2006, Plaintiff's allegations clearly suffice to allege the requisite temporal proximity to establish causation.

Moreover, even accepting Defendants' arguments that Plaintiff's April 2006 letter to the President of Molloy College voicing Plaintiff's concern over the way Dr. Pemberton had been treated was the only complaint pled with the requisite specificity, the allegations would still pass muster under Rule 12(b)(6). Though there is no bright-line rule, an adverse employment action following within several months of the protected activity typically suffices to establish causal connection. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment.") (collecting cases); *Gormon-Bakos v. Cornell Co-op Extension of Schenectady*, 252 F.3d 545, 555 (2d Cir. 2001) (passage of up to five months short enough for causal connection where plaintiffs provided evidence of retaliatory actions throughout that time period); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight month period between filing of EEOC complaint and retaliating action sufficient to suggest causal relationship). The cases relied on by Defendants for the proposition that an eight month gap is too long to establish causation (*see*

Defs.' Reply at 7) were all decided on summary judgment, after the courts had an opportunity to weigh all of the evidence, or lack thereof, bearing on causation. Thus, for example, in *Randall v. Potter*, No. 01 Civ. 2097, 2004 WL 439491, at *8 (S.D.N.Y. Mar, 9, 2004), the court found that plaintiff had failed to come forward with any evidence establishing a causal connection between his termination and his complaints of discrimination where there was an eight to ten month gap in time between plaintiff's complaints and the adverse action he suffered, there were no statements which might suggest retaliatory animus, and plaintiff had a negative incident with a supervisor which predated his complaints. In light of the standard the Court must apply on this Rule 12(b)(6) motion, Defendants' motion should be denied. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is denied. However, because Plaintiff's retaliation claims appear to be brought under Title VI, they are dismissed against the individual defendants in their individual capacities for the reasons discussed *supra*.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is DENIED in part and GRANTED in part. Defendants' motion is GRANTED to the extent that: (1) Plaintiff's Title VI (retaliation claims included), Section 1981, and breach of contract claims are dismissed against the individual defendants in their individual capacities; and (2) Plaintiff's Section 1985 and 1986 claims are dismissed in their entirety. In all other respects, Defendants' motion is DENIED.

**SO ORDERED.**

Dated: Central Islip, N.Y.
July 8, 2008

/s_____

Denis R. Hurley,

United States District Judge